**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Hendrix Salvage Company Incorporated, et al., <br><br> Plaintiffs, <br><br> v. <br><br> Phoenix, City of, et al., <br><br> Defendants. | No. CV-14-02274-PHX-DGC <br><br> **ORDER** |

Defendant Andrea Cummings has filed a motion to dismiss for failure to state a claim upon which relief can be granted. The motion is fully briefed and no party has requested oral argument. The Court will grant the motion in part and deny it in part.

**I.  Background.**

Plaintiff Hendrix Salvage Company, LLC ("HSC") is primarily a recycling business located in Phoenix, Arizona. Doc. 60, ¶ 12. Plaintiffs Lyle and Ronnie Hendrix are officers and shareholders of HSC. *Id.*, ¶¶ 13, 14. In 2012, the Arizona Department of Public Safety ("DPS") and the Arizona Attorney General's Office ("AGO"), among other government agencies, began an investigation referred to as Operation Tin Man, which focused on HSC, Lyle Hendrix, and Ronnie Hendrix (collectively, "Plaintiffs"). *Id.*, ¶ 20. Defendant Andrea Cummings, working as an assistant attorney general for Arizona, allegedly oversaw and assisted all aspects of the operation. *Id.*, ¶ 34. On October 14, 2013, DPS and Phoenix Police officers submitted an affidavit in support of a seizure warrant, seeking the seizure of property belonging to Lyle and Ronnie Hendrix, HSC, and

other related LLCs. *Id.*, ¶ 23. The seizure warrant was approved by Judge Scott McCoy of the Maricopa County Superior Court. *Id.*, ¶ 24.

On October 16, 2013, law enforcement agents seized HSC assets during a raid on HSC's premises. *Id.*, ¶¶ 41-65. In total, officers seized 34 pieces of heavy equipment, $548,000.36 from Plaintiffs' bank accounts and "on-hand funds," and $204,005.02 in un-negotiated checks payable to HSC. *Id.*, ¶¶ 67-69.

On December 13, 2013, Defendant Cummings filed a notice of pending forfeiture and a notice of seizure for forfeiture of the property of HSC, Lyle Hendrix, and Ronnie Hendrix, among others. *Id.*, ¶ 83. Plaintiffs responded with a timely notice of claim to the seized property. *Id.*, ¶ 84. Cummings filed a complaint. *Id.*, ¶ 85. On August 5, 2014, Plaintiffs filed a motion to dismiss the forfeiture proceedings. *Id.*, ¶ 89. Cummings responded on August 25 with a notice of release of property, explaining that the State had released "all items claimed." *Id.*, ¶ 90. Plaintiffs allege that the property was not actually released until October 3, 2014, almost one year after it was seized. *Id.*,¶ 97.

Plaintiffs assert a series of claims against Cummings under 42 U.S.C. § 1983 and the common law. Doc. 60. The claims focus on Cummings' involvement with the investigation of Plaintiffs, preparation of and application for the seizure warrant, the civil forfeiture proceedings, the declaration to the court that seized property had been released, continuing retention of the property, and her alleged supervision of Operation Tin Man. *Id.* Cummings argues that she is entitled to absolute immunity for her work as an assistant attorney general. Doc. 69.

**II.   Legal Standard.**

Section 1983 provides that every "person who acts under color of state law to deprive another of a constitutional right shall be answerable to that person in a suit for damages." *Imbler v. Pachtman*, 424 U.S. 409, 417 (1976). Although the statute does not expressly contain immunities for certain functions of public officials, courts have recognized that § 1983 does maintain common law "immunities 'well grounded in history

and reason.'" *Id.* at 418 (quoting *Tenney v. Brandhove*, 341 U.S. 367, 376 (1951)). Most public officials are presumed to have qualified immunity, which protects them from liability for discretionary functions they perform with reasonable care. *See Buckley v. Fitzsimmons*, 509 U.S. 259, 268 (1993). Prosecutors, however, are absolutely immune from liability for conduct that is "intimately associated with the judicial phase of the criminal process" such as initiating a prosecution or presenting the state's case. *Burns v. Reed*, 500 U.S. 478, 486 (1991) (citing *Imbler*, 424 U.S. at 430).

To determine whether a prosecutor is entitled to absolute or qualified immunity in a particular case, courts use a functional approach "which looks to 'the nature of the function performed, not the identity of the actor who performed it.'" *Buckley*, 509 U.S. at 269 (quoting *Forrester v. White*, 484 U.S. 219, 229 (1988)). "[A]cts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State, are entitled to the protections of absolute immunity." *Buckley*, 509 U.S. at 273. But "[a] prosecutor's administrative duties and those investigatory functions that do not relate to an advocate's preparation for the initiation of a prosecution or for judicial proceedings are not entitled to absolute immunity." *Id*.

"[T]he official seeking absolute immunity bears the burden of showing that such immunity is justified for the function in question." *Burns*, 500 U.S. at 486. Absolute immunity, when applicable, may be invoked in actions filed under § 1983 and the common law. *Mulligan v. Grace*, 666 P.2d 1092, 1094 (Ariz. Ct. App. 1983); *State v. Superior Court in and for Cnty. of Maricopa*, 921 P.2d 697, 700 (Ariz. Ct. App. 1996).

The Ninth Circuit recently affirmed that absolute immunity applies to prosecutors in civil forfeiture actions. *Torres v. Goddard*, No. 12-17096, 2015 WL 4282721, at *4 (9th Cir. Jul. 16, 2015). The court discussed *Butz v. Economou*, 438 U.S. 478 (1978), in which a commodities merchant claimed that Department of Agriculture officials maliciously initiated administrative proceedings after he criticized the agency. *Id*. at 480. The Supreme Court held that absolute immunity applies to "adjudication within a federal

administrative agency" because such adjudication "shares enough of the characteristics of the judicial process." *Id.* at 512-13. *Torres* found that the "reasoning of *Butz* applies with equal or greater force in the civil forfeiture context [because] [i]n rem proceedings seeking the forfeiture of property connected to criminal activity are functionally analogous to criminal proceedings." 2015 WL 4282721 at *4.

**III.   Analysis.**

Plaintiffs allege that Cummings should be held liable for her participation in all stages of Operation Tin Man, the resulting forfeiture proceedings, and the retention of the seized property. Doc. 60. The Court will address the various stages to determine whether Cummings is entitled to absolute immunity, in which event the claims must be dismissed, or qualified immunity, in which event the claims can proceed at least to the summary judgment stage.

**A.   Investigation and Oversight of Operation Tin Man.**

Plaintiffs allege that Cummings assisted in all phases of Operation Tin Man, including the investigatory phase. Prior to a finding of probable cause, Plaintiffs claim that Cummings participated in briefings by law enforcement, acquired knowledge of the findings of the investigation, and gave advice to law enforcement. Doc. 60, ¶ 34. Her advice allegedly concerned (1) the lawfulness of seizing HSC assets, including whether the State had reasonable grounds to believe that the assets were related to racketeering activity and whether they were properly subject to seizure; (2) whether the evidence indicated that Plaintiffs were members of a criminal organization; (3) whether any crimes had been committed by HSC or its employees; (4) whether probable cause existed for the arrest of Plaintiffs or employees of HSC; and (5) whether the plan for the October 16, 2013 raid was lawful in its scope and use of force. *Id.*

Plaintiffs also allege that Cummings had supervisory authority over law enforcement personnel involved in Operation Tin Man and thus had the authority to direct and control the officers' seizure of Plaintiffs' assets. *Id.*, ¶ 35. Plaintiffs allege that Cummings "set in motion a series of unconstitutional acts" and tacitly authorized

"offensive practices." *Id.* These include (1) failure to properly value Plaintiffs' property prior to seizure, resulting in the seizure of assets with no effective net equity and the disruption of Plaintiffs' business; (2) failure to supervise the pre-hearing seizure of various banking accounts and the post-seizure management of trust funds and payroll, again resulting in the disruption of Plaintiffs' business; (3) failure to establish requisite proof of membership in a criminal organization, which resulted in the seizure of assets of individuals that were not members of a criminal organization; (4) failure to ensure that probable cause existed for each asset seized, such as establishing a link between the asset and criminal activity, resulting in the seizure of assets not related to criminal activity and causing disruption to Plaintiffs' business; and (5) agreeing with, or acquiescing in, the use of deadly force, resulting in Lyle Hendrix and HSC employees being exposed to unlawful force and detention. *Id.*

As previously noted, prosecutors enjoy absolute immunity only when they act as advocates in judicial proceedings or engage in activities intimately associated with those proceedings. This includes "acts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial." *Buckley*, 509 U.S. at 273. Absolute immunity does not apply when they act in administrative or investigative capacities. *See Burns,* 500 U.S. at 491-92. Thus, providing legal advice to police in the investigative phase of a case entitles a prosecutor only to qualified immunity. *Id.* at 493-96. As the Supreme Court has noted, it would be "incongruous to allow prosecutors to be absolutely immune from liability for giving advice to the police, but to allow police officers only qualified immunity for following the advice." *Id.* at 495.

The Court cannot conclude at this stage that Cummings is entitled to absolute immunity for the conduct Plaintiffs describe as the investigation and oversight of Operation Tin Man. The complaint suggests that Cummings' advice to law enforcement officers occurred during the investigatory stage of the operation, including her advice concerning the seizure of assets, the valuation of assets, the relation of assets to criminal activity, whether HSC employees were involved in criminal activity, and the proposed

use of force during seizure operations.  If these actions in fact related to investigatory and law enforcement work, they are entitled only to qualified immunity.  Cummings may assert that she engaged in some or all of these activities solely to prepare for filing the forfeiture action, but that raises a question of fact that cannot be resolved at the motion to dismiss stage.  Because it appears from the complaint that Cummings' involvement in these activities did not amount to advocating for the State in court or preparing to do so, the Court will deny the motion to dismiss with respect to these activities.  *See Torres*, 2015 WL 4282721 at \*10 (finding that supervision of functions of police officers, such as the service and execution of warrants, is "likewise a function of a supervising police officer, not a supervising prosecutor").  Cummings may argue in a summary judgment motion that these activities are in fact entitled to absolute immunity.

### B. Seizure Warrant, Affidavit, and Probable Cause.

Plaintiffs allege that Cummings' warrant application to Judge McCoy included many factual omissions and misrepresentations.  Doc. 60, ¶ 29.  Plaintiffs allege that because Cummings advised law enforcement on probable cause, she knew of these inaccuracies and omissions.  *Id.*, ¶¶ 34-40.  But "acts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of [her] role as an advocate for the State, are entitled to the protections of absolute immunity."  *Buckley*, 509 U.S. at 273.  The Arizona civil forfeiture statute provides that an attorney for the State "shall determine whether it is probable that the property is subject to forfeiture and, if so, may cause the initiation of uncontested or judicial proceedings against the property."  A.R.S. § 13-4308(A).  Cummings' evaluation of evidence for the purpose of seeking a judicial warrant, and her preparation of the application for that warrant, were the functions of an advocate for the State seeking to invoke judicial power.  Those functions are protected by absolute immunity.  *See Torres*, 2015 WL 4282721 at \*6 ("[P]reparation of and application for seizure warrants is the civil forfeiture analog to [a] prosecutor's application for an arrest warrant [and] are likewise shielded by absolute immunity."); *see also Kalina v. Fletcher*, 522 U.S. 118, 130

(1997) ("[T]he determination that the evidence was sufficiently strong to justify a probable cause finding . . . and the selection of the particular facts to include in the certification to provide the evidentiary support for the finding of probable cause required the exercise of the judgment of the advocate."). The Court will grant the motion to dismiss with respect to these activities.[1]

### C. Seizure.

Plaintiffs allege that Cummings supervised much of the planning and execution of the property seizure, set in motion unconstitutional acts, and acquiesced in offensive and aggressive practices. *Id.*, ¶¶ 34, 35. "Arizona's civil forfeiture statutes make clear that the seizure of property pursuant to a seizure warrant is the function of police officers, not prosecutors." *Torres*, 2015 WL 4282721 at *7. Accordingly, the "supervision of [the] service and execution of seizure warrants is [the] function of a supervising police officer, not a supervising prosecutor." *Id.* at *10. Cummings' alleged conduct of supervising, planning, and authorizing the seizure thus placed her in the function of a law enforcement officer entitled to qualified immunity, not a prosecutor entitled to absolute immunity. The Court will deny the motion to dismiss with respect to these activities.

### D. Civil Forfeiture Proceedings.

Plaintiffs allege that Cummings' conduct related to the Superior Court civil forfeiture proceedings deprived them of due process. Doc. 60, ¶¶ 83-97, 135-155. As discussed above, however, "proceedings seeking the forfeiture of property connected to criminal activity are functionally analogous to criminal proceedings," and a prosecutor's conduct in such proceedings is entitled to absolute immunity. *Torres*, 2015 WL 4282721 at *4.

Plaintiffs allege that Cummings filed in court a notice of pending forfeiture and notice of seizure. Doc. 60, ¶ 83. Cummings also filed, but did not serve, a complaint.

---

[1] Although a distinction may be made between an attorney who acts as an advocate and one who acts as a witness, Cummings did not sign the warrant affidavit as a witness. The affidavit was submitted by Defendants Gallagher and Hawkins. Doc. 60, ¶ 23.

- 7 -

*Id.*, ¶¶ 85, 88. Plaintiffs claim that Cummings thereby prevented them from contesting the execution of the warrant because, under Arizona law, the magistrate that issued the warrant is prevented from taking testimony if a forfeiture action is pending. *Id.*, ¶¶ 86, 87. Plaintiffs also allege they were prevented from conducting discovery to controvert the seizure affidavit because the complaint that Cummings filed was never served. *Id.*, ¶ 88. Plaintiffs subsequently filed a motion to dismiss, in response to which Cummings filed a notice of release of property. *Id.*, ¶¶ 89, 90. Cummings filed a motion for voluntary dismissal almost a month later. *Id.*, ¶ 94.

Each of these alleged actions by Cummings was undertaken in her role as an attorney representing the State in court proceedings. Under *Torres*, these actions are intimately associated with the judicial process and are entitled to absolute immunity. The Court will grant the motion to dismiss with respect to these activities.

### E. Retention of HSC Property.

Plaintiffs allege that Cummings improperly retained their property after declaring to the court that it had been released. *Id.*, ¶¶ 90-97. Plaintiffs further allege that Cummings held their property hostage in order to obtain a release of the State from liability for the wrongful seizure. *Id.*¸ ¶ 135.

The Court concludes that Cummings' alleged retention of Plaintiffs' property and her negotiations for a release are not entitled to absolute immunity. In *Schrob v. Catterson*, 948 F.2d 1402 (3rd Cir. 1991), which *Torres* cites, a prosecutor allegedly delayed restoring control of seized property to its owner and made an "unlawful demand for a personal indemnification release from [the owner] as a condition of returning [the seized property]." *Id.* at 1417. The Third Circuit held that the prosecutor's retention of the property and negotiations for a release were "not directly related to the judicial process" and instead involved the prosecutor "acting in an administrative role." *Id.* at 1419. The actions therefore were not entitled to absolute immunity. *Id.*

The Court finds the analysis in *Schrob* persuasive. Cummings allegedly filed a notice of release of property on August 25, 2014, in which she told the Superior Court

- 8 -

1 that the State had released Plaintiffs' property.  Doc. 60, ¶ 90.  Plaintiffs allege, however, that "no defendant had taken any overt action intending to commence a process which would result in the return of property" at that time, and did not do so until October 3, 2014 when agreements were finally made for the release of the property.  *Id.*, ¶¶ 90-97. Plaintiffs allege that Cummings continued to hold their property, which was needed for the operation of their business, "in an attempt to negotiate a release of claims and settlement in favor of the state in return for Plaintiffs' agreeing to waive any potential civil claims associated with the wrongful seizure of its property." *Id.*, ¶ 135.

Cummings argues that the prosecutor's post-seizure retention of the property in *Schrob* was not covered by absolute immunity because the seizure was unauthorized.  *Id.* She argues that the seizure in this case was authorized and absolute immunity should therefore cover its post-seizure retention.  *Id.*  But the relevant question is not whether the seizure in this case was authorized, but what function Cummings was performing when she continued to hold the property and negotiate for a release.  The holding of property is an administrative function.  Although negotiating for a release is a closer question as it involves conduct in which lawyers often participate, the Court agrees with the conclusion in *Schrob* that absolute immunity for such activity "is not required to protect prosecutorial actions affecting the judicial process."  948 F.2d at 1420.  The Court also agrees with *Schrob*'s observation that the negotiation occurs at a time when the prosecutor's actions are not under judicial control and "the judicial process will not serve as an adequate check on a prosecutor's actions." *Id.*

///
///
///
///
///
///
///

- 9 -

The Court finds that these actions are entitled to qualified immunity, not absolute immunity. The Court will deny the motion to dismiss with respect to these actions.

**IT IS ORDERED:**

1. Defendant Cummings' motion to dismiss is **granted in part and denied in part** as set forth above.
2. Plaintiffs' motion for leave to submit supplemental briefing (Doc. 82) is **denied**. The Court reviewed the *Torres* decision.

Dated this 13th day of August, 2015.

*David G. Campbell*
United States District Judge